UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TOMMY SANSOM,**

    **Plaintiff,**

v.                                        **Case No. 8:20-cv-775-JDW-AAS**

**ANDREW SAUL, Commissioner,**
**Social Security Administration,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Tommy Sansom requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, and the parties' joint memorandum, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED.**

**I.**      **PROCEDURAL HISTORY**

Mr. Sansom applied for DIB and SSI and alleged disability beginning on May 15, 2016. (Tr. 15, 279–83, 284–92). Disability examiners denied Mr. Sansom's applications initially and after reconsideration. (Tr. 101–12, 114–25,

131–43, 144–56). At Mr. Sansom's request, the ALJ held a hearing on October 4, 2018. (Tr. 37–70, 190–91). The ALJ issued an unfavorable decision to Mr. Sansom on December 26, 2018. (Tr. 15–29).

On February 12, 2020, the Appeals Council denied Mr. Sansom's request for review, making the ALJ's decision final. (Tr. 1–6). Mr. Sansom requests judicial review of the Commissioner's final decision. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Background

Mr. Sansom was thirty-four years old on his alleged onset date and the date he applied for DIB and SSI—May 15, 2016. (Tr. 27). Mr. Sansom has a high school equivalent education and has no past relevant work. (Tr. 27–28, 51, 67).

### B.   Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if a claimant is engaged in substantial gainful activity,[2] he is not disabled. 20 C.F.R. §§ 404.1520(b),

---

[1] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. §§ 404.1572, 416.910.

416.920(b). Second, if a claimant has no impairment or combination of impairments that significantly limit his physical or mental ability to perform basic work activities, he has no severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, he is not disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[3] *Id.* Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from performing work that exists in the national economy, he is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

    The ALJ determined Mr. Sansom did not engage in substantial gainful activity since May 15, 2016 (the date of the application and disability onset). (Tr. 17). The ALJ found Mr. Sansom had these severe impairments: "depression, anxiety, schizophrenia, and learning disorder (mild mental

---

[3] A claimant's RFC is the level of physical and mental work she can consistently perform despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

retardation (currently described as intellectual disorder) per consultative psychological examiner)." (Tr. 18). But the ALJ found none of Mr. Sansom's impairment or any combination of his impairments meet or medically equaled the severity of an impairment in the Listings. (*Id.*).

The ALJ found Mr. Sansom had the RFC to perform a full range of work at all exertional levels. (Tr. 21). However, the ALJ found Mr. Sansom's RFC included the following nonexertional limitations:

> The claimant is limited to jobs that can be learned in 30 days by on-the-job demonstration or repetition and that require only occasional decision making or exercise of judgment in connection with job performance. He should have no work-related interaction with the public, but can have occasional interaction with coworkers and supervisors. The claimant should have jobs that are limited to working with things rather than people.

(*Id.*).

The ALJ noted Mr. Sansom has no past relevant work. (Tr. 27). Using a Vocational Expert's (VE) testimony, the ALJ then determined Mr. Sansom could perform jobs that exist in significant numbers in the national economy, specifically as a garment sorter, retail marker, and laundry folder. (Tr. 28). Thus, the ALJ concluded Mr. Sansom was not disabled since the May 15, 2016 application date. (Tr. 29).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports her findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also*

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B. Issues on Appeal

Mr. Sansom raises two issues on appeal. First, Mr. Sansom argues the ALJ erred in finding that he did not meet the requirements of Listing 12.05B of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 22, pp. 23–31). Second, Mr. Sansom argues the ALJ failed to include certain limitations in the RFC and then failed to resolve apparent conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT). (*Id.* at pp. 39–43).

#### 1. Whether the ALJ properly found Mr. Sansom does not meet the requirements of Listing 12.05B.

Mr. Sansom argues that he meets all the requirements of Listing 12.05B.[4] (Doc. 22, p. 31). In response, the Commissioner argues Mr. Sansom failed to meet his burden that he meets the requirements of Listing 12.05B. (*Id.* at pp. 31–33). The Commissioner asserts substantial evidence supports the ALJ's findings of moderate limitations for Mr. Sansom's mental adaptive

---

[4] The ALJ also found Mr. Sansom did not meet the requirements of Listing 12.05A. (Tr. 20). Mr. Sansom does not argue that he meets the requirements of Listing 12.05A. Thus, Mr. Sansom has waived that argument. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006).

6

functioning. (*Id.* at pp. 33–38).

A claimant must prove his impairment meets one of the listed impairments in Appendix 1 at step three. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When analyzing the Listings at step three, the ALJ is not required "to mechanically recite the evidence leading to her determination." *Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986); *see also Flemming v. Comm'r of Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015). A conclusory statement deciding a claimant does not have an impairment or combination of impairments medically equal to a Listing is evidence the ALJ considered the combined effects of claimant's impairments. *See Wilson*, 284 F.3d at 1224.

The plaintiff must show his impairments meet or equal an impairment in the Listings. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To meet Listing 12.05B, the claimant must show the following:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

      a.    A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

      b.    A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2.    Significant deficits in adaptive functioning currently manifested by extreme limitation of on, or marked limitation of two, of the following areas of mental functioning:

      a.    Understand, remember, or apply information; or
      b.    Interact with others; or
      c.    Concentrate, persist, or maintain pace; or
      d.    Adapt or manage oneself; and

3.    The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. pt. 404, subpart P, app. 1 § 12.05B.

Here, the ALJ noted Mr. Sansom's subaverage general intellectual functioning by noting, in 2007, Mr. Sansom had "obtained a valid verbal intelligence quotient (IQ) score of 69, a valid performance IQ score of 72, and a valid full-scale IQ score of 67." (Tr. 21). Despite the low IQ, the ALJ stated Mr. Sansom received a global assessment of functioning (GAF) score of 55 in 2007. (*Id.*). The ALJ noted Mr. Sansom received a GAF score of 55 reflecting moderate mental symptoms. (*Id.*). The ALJ also reviewed Dr. Bharminder

8

Bedi's, Mr. Sansom's treating psychiatrist, records from 2016 to 2018 and noted Dr. Bedi assigned Mr. Sansom with GAF scores between 50-60, again reflecting moderate mental symptoms. (*Id.*).

Mr. Sansom states he meets the first and third prong of Listing 12.05B,[5] and he makes two arguments on the second prong where the ALJ determined Mr. Sansom did not have significant deficient in mental adaptive functioning.

First, Mr. Sansom argues the ALJ relied too heavily on Mr. Sansom's GAF scores to assess Mr. Sansom's mental limitations in the four areas of mental adaptive functioning. (Doc. 22, p. 25). Mr. Sansom identifies no legal authority stating the ALJ is precluded from considering GAF scores, along with other record evidence, to assess mental limitations. In fact, the ALJ can consider GAF scores in evaluating mental disability claims. *See McGriff v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 469, 471 (11th Cir. 2016); *Gilabert v. Comm'r of Soc. Sec.*, 396 F. App'x 652 (11th Cir. 2010). Thus, the ALJ properly considered the GAF scores and the other record evidence to support his decision on Mr. Sansom's mental limitations in mental adaptive functioning. (*See* Tr. 25–26).

---

[5] In the joint memorandum, the Commissioner does not argue that Mr. Sansom does not have subaverage IQ scores or that Mr. Sansom's mental limitations did not began before the age of 22. Thus, the undersigned considers the only contested issue is whether Mr. Sansom has significant deficits in mental adaptive functioning.

Second, Mr. Sansom argues the ALJ erred in finding Mr. Sansom did not have an extreme limitation in at least one area of mental adaptive functioning or marked limitation in at least two areas of mental adaptive functioning. (Doc. 22, pp. 25–29). The ALJ found Mr. Sansom had these limitations: moderate limitation in understanding, remembering or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace, and a moderate limitation in adapting or managing oneself. (Tr. 19–20). In making this determination, the ALJ reviewed Mr. Sansom's medical records. (Tr. 22–24).

On November 13, 2007, Joseph W. Blitch, Ph.D., evaluated Mr. Sansom and assessed that Mr. Sansom had mild mental retardation. (Tr. 471–73). Although Mr. Sansom incorrectly identified the number of weeks in a year, he correctly stated how many months were in a year and knew what day, month, and year it was. (Tr. 472). Even though Dr. Blitch noted Mr. Sansom could not complete three out of four math problems, Mr. Sansom showed good persistence and effort in the assessment. (Tr. 472–73).

On August 18, 2008, Dr. Richard Brown evaluated Mr. Sansom and assessed that Mr. Sansom had borderline low IQ and avoidant and dependent personality disorders. (Tr. 475–76). Although Mr. Sansom would turn his body away from making eye contact, Dr. Brown noted Mr. Sansom made more eye

contact as the interview progressed. (Tr. 475). Dr. Brown noted Mr. Sansom had congruent, concrete, but unsophisticated thought. (Tr. 476). Although Dr. Brown noted Mr. Sansom did not always understand his questions, Mr. Sansom's thoughts were generally coherent and logical. (*Id.*). Even though Dr. Brown noted Mr. Sansom's short-term memory was mediocre, his long-term and immediate memory were normal. (*Id.*).

Although some medical records noted less than normal eye contact (Tr. 543, 622, 632, 634, 677), the doctors noted Mr. Sansom had normal eye contact (Tr. 520, 523, 529, 605, 612, 625, 762). Also within the medical records, Mr. Sansom appeared alert and oriented and in no acute distress. (Tr. 539, 540, 543, 545, 551, 556, 558, 560, 562, 599, 601, 605, 607, 610, 612, 614, 617, 620, 622, 625, 627, 630, 632, 634, 636, 640, 642, 650, 653, 656, 658, 672, 674, 677, 679, 762, 766). Even though the medical records noted Mr. Sansom was anxious (Tr. 543, 549, 560, 617, 627, 634, 640), the doctors more often noted he had a pleasant mood (Tr. 520, 523, 529, 556, 558, 562, 605, 612, 625, 650, 653, 658, 762). Overall, Mr. Sansom's progress notes from his treating psychiatrist, Dr. Bedi, do contain evidence of his mental limitations, but the clinical findings were unremarkable, often within normal limits. (*See* Tr. 690–724, 768–72). Thus, the medical records support the ALJ's determination that Mr. Sansom had only moderate limitations in mental adaptive functioning not marked or

extreme limitations.

The ALJ also properly considered that Mr. Sansom obtained a driver's license, after losing it, drove his car short distances, cooked simple meals, played video games, watched television, took care of his disabled brother, worked various part-time jobs, and performed daily living activities. (*See* Tr. 24). When considering Mr. Sansom's work history and daily activities, substantial evidence supports the ALJ's conclusion that, despite Mr. Sansom's low IQ score, he does not show the requisite deficiencies in mental adaptive functioning to meet Listing 12.05B. *See, e.g.*, *Perkins v. Comm'r of Soc. Sec.*, 553 F. App'x 870 (11th Cir. 2014) (finding despite the claimant low IQ score, the ALJ properly considered the claimant's past work as a cook, activities of daily living, and other record evidence in finding the claimant's deficits in adaptive functioning did not reflect an intellectual disability); *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980 (11th Cir. 2013) (substantial evidence supported the ALJ's conclusion that claimant did not show deficits in adaptive functioning where she worked part time at a nursery, drove herself to work, prepared simple meals, dressed and groomed herself, attended church regularly, and socialized with friends).

Thus, substantial evidence supports the ALJ's determination that Mr. Sansom did not meet Listing 12.05B.

## 2. Whether the ALJ erred in finding Mr. Sansom had the RFC to perform the jobs identified by the VE.

At step five of the sequential evaluation, the ALJ must consider the claimant's RFC combined with his age, education, and work experience to determine whether a significant number of jobs exist in the national economy he can perform. *Phillips*, 357 F.3d at 1239 (citation omitted). This shifts the burden from the claimant to the Commissioner. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). The ALJ may consult a VE with hypothetical questions about whether someone with the claimant's impairments could find employment in the national economy. *Phillips*, 357 F.3d at 1239–40. If the Commissioner shows that the claimant can perform other jobs, then "the burden shifts back to the claimant to prove [he] is unable to perform the jobs suggested by the [Commissioner]." *Hale*, 831 F.2d at 1011.

The ALJ posed a hypothetical question to the VE that reflected Mr. Sansom's RFC, which stated

> [Mr. Sansom] is limited to jobs that can be learned in 30 days by on-the-job demonstration or repetition and that require only occasional decision making or exercise of judgment in connection with job performance. He should have no work-related interaction with the public, but can have occasional interaction with coworkers and supervisors. [Mr. Sansom] should have jobs that are limited to working with things rather than people.

(Tr. 21). The VE testified that a person with Mr. Sansom's limitations and

vocational profile could perform jobs existing in significant numbers in the national economy, such as a garment sorter, retail marker, and laundry folder. (Tr. 28, 66–68). Mr. Sansom makes three distinct arguments about the jobs the ALJ found he could perform. (Doc. 22, pp. 39–43).

First, Mr. Sansom argues the ALJ failed to include his limitations in reading and arithmetic in his RFC. (Doc. 22, pp. 39–40). The Commissioner asserts Mr. Sansom's argument is a challenge to the RFC determination, not a challenge to an apparent conflict between the VE's testimony and the DOT. (*Id.* at pp. 45–46). The Commissioner argues the ALJ's RFC determination is supported by substantial evidence (*Id.* at p. 46).

At step four of the sequential evaluation, the ALJ determines the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ must determine the claimant's RFC using all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238. A claimant's "RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments." *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009).

Because of the overall record, omitting a reading and arithmetic limitation renders neither the RFC nor the vocational expert's testimony unsupported by substantial evidence. The ALJ specifically created the RFC to

account for Mr. Sansom's mental limitations including his problems with reading, math, concentration, and getting along with others. (Tr. 27). Additionally, Mr. Sansom's school records show that although he received special services and diploma, Mr. Sansom received mostly "A" through "C" grades in his high school English and math courses. (Tr. 510–16). Also contradicting Mr. Sansom's argument is that he had to re-obtain his driver's license, following the rules set by the local DMV, after he lost his license because of a driving while impaired charge. (Tr. 47). Mr. Sansom's argument that the ALJ's RFC should have included a limitation in reading and arithmetic lacks merit.

Even if a limitation in reading and arithmetic should have been included in either the RFC or the hypothetical posed to the vocational expert, any error was harmless and the ALJ's step-five determination remains supported by substantial evidence. Mr. Sansom has not shown that any limitation in reading and arithmetic would somehow reduce the number of jobs otherwise available to him in these or similar occupations to something less than a significant number. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (finding if at step five, the Commissioner meets the burden of showing jobs exist in significant numbers in the national economy, "the burden shifts back to the claimant to prove [he] is unable to perform the jobs suggested by

the [Commissioner]." (citation omitted)).

Second, Mr. Sansom argues none of the jobs cited by the ALJ comply with the allegedly improper RFC. (Doc. 22, p. 41). Mr. Sansom provides "Detailed Job Specialty Report" created by Job Browser Pro[6] from SkillTRAN for each job to support his arguments. (Doc. 22, Exs. 1, 2, 3).

For the garment sorter (DOT 222.687-014), Mr. Sansom argues the job requires him to process records and fill orders, which requires him to learn from written materials and cannot be learned through demonstration and repetition as required by the ALJ's RFC. (Doc. 22, p. 41). But this alleged requirement comes from the U.S. Department of Labor's *Revised Handbook for Analyzing Jobs*. (*See* Doc. 22, Ex. 1, p. 1). For retail marker (Dot. 209.587-034), Mr. Sansom argues the job requires him to learn from written materials and participate as a team member, which doesn't allow him to learn from demonstration and repetition and also requires interaction with the public, in contradiction of the RFC. (Doc. 22, p. 41). However, these alleged requirements come from the U.S. Bureau of Labor's Occupational Outlook Handbook,

---

[6] Job Browser Pro is a purchasable software program that pulls data from many databases including the DOT, Occupational Outlook Handbook, and Occupation Employment Statistics, among others. *See Job Browser Pro*, SkillTRAN, https://skilltran.com/index.php/products/pc-based-solutions/job-browser-pro (last visited June 30, 2021).

specifically for the occupation of store clerks and order fillers. (Doc. 22, Ex. 2, p. 2). For the laundry folder (DOT 369.687-018), Mr. Sansom argues the laundry folder requires helping production workers which exceeds the RFC's limitation he only occasionally interact with co-workers. (Doc. 22, p. 41). But this alleged requirement comes from U.S. Bureau of Labor's Occupational Outlook Handbook, specifically for the occupation of production workers. (Doc. 22, Ex. 3, p. 1).

These Detailed Job Specialty Reports include information from various different sources, including the DOT. But the information provided from the DOT in those reports do not include the skills that Mr. Sansom argues contradict the ALJ's RFC. Thus, the DOT titles for garment sorter, retail marker, and laundry folder contain no skills or requirements inconsistent with the ALJ's RFC determination. *See Olney v. Comm'r of Soc. Sec.*, No. 2:17-cv-349-FtM-29CM, 2018 WL 4760799, at *12 (M.D. Fla. July 30, 2018).

Last, Mr. Sansom argues the ALJ failed to resolve and investigate inconsistencies between the VE's testimony and the DOT. (Doc. 22, pp. 42–43). Social Security Ruling (SSR) 00-4p "is designed to identify and obtain a reasonable explanation for any conflicts between occupational evidence

17

provided by a [VE] and information in the DOT."[7] *Davis v. Astrue*, No. 8:11-CV-2398-T-TGW, 2012 WL 6213124, at *7 (M.D. Fla. Dec. 13, 2012). An ALJ may not rely on a VE's testimony that there is no conflict with the DOT. *See Washington*, 906 F.3d at 1356. Instead, the ALJ must identify and resolve apparent conflicts between the DOT and VE testimony. *Id.* An "apparent conflict" is "a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.* at 1365. "At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.*

Here, Mr. Sansom lays out the legal standard under *Washington* but highlights no apparent conflicts the ALJ missed. (*See* Doc. 22, pp. 42–43). Although unclear, Mr. Sansom appears to argue the apparent conflict involves SkillTRAN description of the jobs and the VE's testimony. But Mr. Sansom incorrectly relies on the SkillTRAN to show an apparent conflict. Instead, as discussed in *Washington*, the apparent conflict must be between the VE's testimony and DOT. 906 F.3d at 1365. Because there is no apparent conflict

---

[7] SSRs are agency rulings published under the Commissioner's authority and are binding on all components of the SSA. *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990). They are not binding on a court. *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981).

18

between the VE's testimony and the DOT, *Washington* does not apply.

Thus, substantial evidence supports the ALJ's RFC determination and the VE's testimony that other jobs exist that Mr. Sansom can perform.

## IV. CONCLUSION

The Commissioner's decision is supported by substantial evidence. Thus, the undersigned recommends the Commissioner's decision be **AFFIRMED** and the Clerk be directed to close the file.

**RECOMMENDED** in Tampa, Florida on June 30, 2021.

*Amanda Arnold Sansone*

AMANDA ARNOLD SANSONE
United States Magistrate Judge

## **NOTICE TO PARTIES**

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.